## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

ALLERGEASE, INC.,

                         Plaintiff,

          vs.

WALGREEN CO.,

                       Defendants.

Case No. 1:15-cv-04873

Judge Charles P. Kocoras

## DEFENDANT WALGREEN CO.'S ANSWER,
## AFFIRMATIVE DEFENSES, COUNTERCLAIM AND JURY DEMAND

Defendant, Walgreen Co. ("Walgreens"), respectfully answers the Complaint by Plaintiff, AllergEase, Inc. ("AllergEase" or "Plaintiff"), as follows:

### NATURE OF ACTION

1.      This is an action by ALLERGEASE against WALGREENS for breach of contract, unjust enrichment, detrimental reliance, and tortious interference with prospective economic advantage. By this action, ALLERGEASE seeks compensatory damages, punitive damages, costs and any and all equitable relief that this Court deems appropriate.

### ANSWER:

Walgreens admits only that in this action Plaintiff purports to assert claims against Walgreens for breach of contract, unjust enrichment, detrimental reliance, and tortious interference with prospective economic advantage, and that Plaintiff seeks damages and other relief. Walgreens denies that it is liable to Plaintiff, and denies the remaining allegations of Paragraph 1.

2.      As detailed below, this case stems from twelve purchase orders for allergy throat lozenges placed by WALGREENS on or around May 1, 2013 with ALLERGEASE, in the amount of $496,026.72. After confirming the large order with WALGREENS on May 3, 2013, ALLERGEASE entered into a manufacturing contract with Pharmaloz Manufacturing, Inc. (hereinafter referred to as "Pharmaloz") to produce the needed inventory of the product. The manufacturing cost ALLERGEASE $544,083.54, more than it was being paid by WALGREENS

for the product, but ALLERGEASE wanted to establish a trusting and ongoing business relationship with WALGREENS. On or around May 21, 2013, three weeks after placing the twelve purchase orders, WALGREENS requested to significantly adjust the orders downward, from $496,026.72 to $139,711.68, which is a reduction of $356,315.04. By the time WALGREENS requested to significantly reduce its purchase order with ALLERGEASE, ALLERGEASE was unable to reduce its manufacturing order with Pharmaloz. WALGREENS has only paid ALLERGEASE $139,711.68 for the twelve purchase orders in question.

**ANSWER:**

Walgreens admits only that in this action Plaintiff purports to assert claims against Walgreens in connection with various purchase orders for throat lozenges, and responds below to the detailed allegations. Walgreens is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 2 concerning Pharmaloz or AllergEase's motivations underlying the transactions, and therefore denies the same. Walgreens denies the remaining allegations of Paragraph 2.

4.      Due to not paying the $496,026.72 in full, WALGREENS breached its contract with ALLERGEASE. Also, WALGREENS was unjustly enriched by receiving four additional orders of ALLERGEASE's product in 2014, invoiced at $35,011.68, without paying for those orders. Based on WALGREEN's placing twelve purchase orders in 2013, ALLERGEASE has suffered significant, long-term detrimental reliance damages because of the Defendants' actions which caused the breach of contract. Lastly, WALGREENS decision to improperly liquidate forty six thousand and fifty three (46,053) packs of ALLERGEASE's product, even though WALGREENS and ALLERGEASE previously agreed that WALGREENS would return all unused product back to ALLERGEASE, amounted to tortious interference with ALLERGEASE's prospective economic advantage across the United States.

**ANSWER:**

Walgreens denies the allegations of Paragraph 4.

## PARTIES

5.      ALLERGEASE is a Virginia corporation with its principal place of business in Danville, Virginia, and engages in the business of selling all natural herbal supplements, including allergy lozenges. ALLERGEASE's corporate address is 541 Bridge Street, Danville, Virginia 02454.

**ANSWER:**

Walgreens is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 5 and therefore denies the same.

6.     WALGREENS is an Illinois corporation with its principal place of business in Deerfield, Illinois that operates pharmacies throughout the United States, including Cook County, Illinois. WALGREENS' corporate address is 108 Wilmot Road, Deerfield, Illinois 60015.

**ANSWER:**

Walgreens admits that it is an Illinois corporation with a principal place of business in Deerfield, Illinois. Walgreens further admits that it is a pharmacy retailer with stores throughout the United States, including in Cook County, Illinois. Walgreens admits that its corporate headquarters is located at 108 Wilmot Road, Deerfield, Illinois 60015. Walgreens denies the remaining allegations of Paragraph 6.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1332.

**ANSWER:**

Paragraph 7 states conclusions of law to which no response is required. To the extent a response is required, Walgreens admits that jurisdiction in this Court is proper.

8.     Venue is proper in the Northern District of Illinois as WALGREENS conducts ongoing business in Cook County, Illinois.

**ANSWER:**

Paragraph 8 states conclusions of law to which no response is required. To the extent a response is required, Walgreens admits that venue in this Court is proper.

<u>**GENERAL ALLEGATIONS COMMON TO ALL COUNTS**</u>

**Improper honoring of expired coupons at ALLERGEASE's expense[1]**

      9.      ALLERGEASE has supplied WALGREENS with the product AllergEase 21 pk. lozenges, which were offered for sale at WALGREENS locations starting Spring of 2013.

**ANSWER:**

      Walgreens admits the allegations of Paragraph 9.

      10.      On or around April 14, 2013 until April 21, 2013, ALLERGEASE and WALGREENS agreed to an in-store promotion.

**ANSWER:**

      Walgreens admits that it offered an in-store promotion on the AllergEase product that started on April 14, 2013. Walgreens denies the remaining allegations of Paragraph 10.

      11.      Under the terms of the promotion, customers who purchased AllergEase 21 pk. Lozenges between April 14, 2013 and April 20, 2013 would receive a $4.00 Register Reward.

**ANSWER:**

      Walgreens admits the allegations of Paragraph 11.

      12.      This Register Reward was to apply to the customers' next shopping order, and was to expire after two (2) weeks if unused.

**ANSWER:**

      Walgreens admits the allegations of Paragraph 12.

      13.      Under the terms of the promotion agreement, ALLERGEASE was to be responsible for funding the redemption of the Register Rewards.

**ANSWER:**

      Walgreens admits only that AllergEase was responsible for reimbursing Walgreens for any Register Rewards redeemed as a result of the in-store promotion of AllergEase. Walgreens

---

[1] Any headings included from AllergEase's Complaint are included solely for convenience. To the extent any heading is construed to be an allegation, Walgreens denies the same.

denies that there was a written "promotion agreement," and denies the remaining allegations in Paragraph 13.

14.     In implementing the in-store promotion, WALGREENS continued to honor Register Rewards even after their 2-week expiration date.

**ANSWER:**

Walgreens admits only that, in very limited circumstances, it may have honored a small number of Register Rewards after the 2-week expiration date, however, Walgreens is not aware of any actual such occurrence in regards to the AllergEase promotion and demands proof of the same. Walgreens denies the remaining allegations in Paragraph 14.

15.     ALLERGEASE incurred estimated expenses, by information and belief, around $40,000.00 in funding the redemption of Register Rewards that should have been declined due to being expired, with the exact expenses to be determined with further litigation.

**ANSWER:**

Walgreens is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15, and therefore denies the same.

**Detrimental reliance on purchase order subsequently reduced by WALGREENS**

16.     On or around May 1, 2013, WALGREENS placed twelve (12) purchase orders with ALLERGEASE for an amount of AllergEase lozenges product totaling $496,026.72.

**ANSWER:**

Walgreens admits only that it placed purchase orders with AllergEase in or around May 2013, and refers AllergEase to the specific purchase orders themselves for their precise terms. Walgreens denies the allegations of Paragraph 16 to the extent they vary from the actual purchase orders at issue.

17.     ALLERGEASE considered the quantity of product ordered to be surprisingly high, and on or around May 2, 2013, ALLERGEASE requested its agent broker David Bull to confirm with WALGREENS that the size of the purchase orders was correct.

**ANSWER:**

Walgreens is without knowledge or information sufficient to form a belief as to the truth

of the allegations in Paragraph 17, and therefore denies the same.

18.     On May 3, 2013, WALGREENS Inventory Specialist-OTC Vanessa Mendez
responded to an email from David Bull confirming the purchase order quantities.

**ANSWER:**

Walgreens admits only that Vanessa Mendez responded to an email from David Bull

concerning purchase orders placed with AllergEase, and refers AllergEase to the email itself for

the actual substance of the communications.  Walgreens denies any allegations of Paragraph 18

that are inconsistent with that email, and denies the remaining allegations in Paragraph 18.

19.     Upon confirmation of the quantities of product ordered by WALGREENS,
ALLERGEASE entered into a manufacturing contract with Pharmaloz Manufacturing, Inc., to
produce the needed inventory of product. The manufacturing cost AllergEase $544,083.54.

**ANSWER:**

Walgreens is without knowledge or information sufficient to form a belief as to the truth

of the allegations in Paragraph 19, and therefore denies the same.

20.     On or around May 21, 2013, three (3) weeks after placing the purchase orders,
WALGREENS adjusted the orders sharply downward in quantity. The value of product ordered
was reduced from $496,026.72 to $139,711.68, which is a reduction of $356,315.04.

**ANSWER:**

Walgreens admits only that it made adjustments to the purchase orders, denies

AllergEase's subjective characterization of the events, states that the purchase orders themselves

reflect the adjustments, and refers AllergEase to the specific purchase orders themselves.

Walgreens denies the allegations of Paragraph 20 to the extent they vary from the actual

purchase orders at issue.

21.     At the time that WALGREENS reduced its purchase orders, Pharmaloz Manufacturing, Inc. had already manufactured the order and ALLERGEASE was no longer able to reduce its manufacturing order.

**ANSWER:**

Walgreens is without knowledge or information sufficient to form a belief as to the truth

of the allegations in Paragraph 21, and therefore denies the same.

22.     As a result of WALGREENS' reduction in its purchase order quantities, ALLERGEASE incurred expenses of $356,315.04 in the manufacturing of surplus product. This expense depleted ALLERGEASE's capital and harmed its ability to spend on marketing and other business activities.

**ANSWER:**

Walgreens is without knowledge or information sufficient to form a belief as to the truth

of the allegations in Paragraph 22, and therefore denies the same.

23.     ALLERGEASE shipped product to WALGREENS in the amount of the reduced purchase orders on or around June of 2013.

**ANSWER:**

Walgreens admits only that it received AllergEase product pursuant to the adjusted

purchase orders described in Paragraph 20.  Walgreens denies the remaining allegations in

Paragraph 23.

**Liquidation of ALLERGEASE product contrary to contract**

24.     On or around August 11, 2014, WALGREENS contracted with JD Closeouts, a third party liquidator, to sell ALLERGEASE inventory in its possession.

**ANSWER:**

Walgreens denies the allegations of Paragraph 24.

25.     Under the terms of the contract between ALLERGEASE and WALGREENS, in the event of unsatisfactory sales ALLERGEASE would participate in a 90-day markdown period and subsequently accept return of residual inventory. Third party liquidation was not authorized in the contract.

**ANSWER:**

Walgreens refers AllergEase to the specific contract terms between Walgreens and AllergEase for its precise terms, and denies the allegations of Paragraph 25 to the extent they vary from the actual contract terms at issue.

26.    WALGREENS did arrange for a markdown with ALLERGEASE on or around July 2014, but undertook its August 2014 liquidation action less than ninety (90) days subsequently.

**ANSWER:**

Walgreens admits only that a markdown of the AllergEase product began in July 2014. Walgreens denies the remaining allegations of Paragraph 26.

27.    WALGREENS did not at any point offer ALLERGEASE to arrange return of residual inventory, and did not inform ALLERGEASE of its intent to contract with a liquidator for the sale of AllergEase lozenges inventory in WALGREENS' possession.

**ANSWER:**

Walgreens admits only that it is not currently aware of any communications between Walgreens and AllergEase concerning a contract with a liquidator. Walgreens denies the remaining allegations of Paragraph 27.

28.    Upon being contracted by WALGREENS, JD Closeouts offered AllergEase lozenges at a liquidation price of $1.49 per pack.

**ANSWER:**

Walgreens denies that it contracted with JD Closeouts. Walgreens is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 28, and therefore denies the same.

29.    ALLERGEASE lozenges had until this point been available at $5.79 per pack at retail price, and $3.49 per pack at wholesale price.

**ANSWER:**

Walgreens admits only that, prior to a price markdown, 21-count packs of AllergEase lozenges retailed for approximately $4.99 to $5.99. Walgreens further admits that the vendor invoice price of a 21-count pack of AllergEase lozenges was $3.49. Walgreens denies the remaining allegations of Paragraph 29.

30.     The availability of AllergEase lozenge packs at a the [sic] $1.49 liquidation price point harmed the ability of ALLERGEASE to sustain its pricing model and negatively affected the value of its brand.

**ANSWER:**

Walgreens is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 30, and therefore denies the same.

**Nonpayment for fulfilled purchase order and spurious invoices**

31.     Starting on or around September 17, 2014, WALGREENS placed eleven (11) purchase orders for AllergEase lozenges, totaling $35,011.68 worth of product.

**ANSWER:**

Walgreens admits only that it placed purchase orders with AllergEase in or around September 2014, and refers AllergEase to the specific purchase orders themselves for their precise terms. Walgreens denies the allegations of Paragraph 31 to the extent they vary from the actual purchase orders at issue.

32.     ALLERGEASE President Zeeshan Kaba inquired with WALGREENS personnel by email to confirm the veracity of the purchase orders. On or about September 22, 2014, WALGREENS Item and Vendor Coordinator Brian Szumigalski emailed Zeeshan Kaba confirming the orders and requesting that the product be shipped as soon as possible.

**ANSWER:**

Walgreens admits only that Zeeshan Kaba contacted Walgreens on or about September 17, 2014 via email concerning AllergEase purchase orders, and that Brian Szumigalski responded to Zeeshan Kaba via email on September 22, 2014. Walgreens refers AllergEase to

the emails themselves for the actual substance of the communications.  Walgreens denies any

allegations of Paragraph 32 that are inconsistent with those emails, and denies the remaining

allegations of Paragraph 32.

33.     WALGREENS Purchasing Coordinator Brenda Cabalquinto also responded to Zeeshan Kaba's emails requesting clarification on or about September 17 and 22, 2014, and did not indicate that there were any technical glitches or other irregularities surrounding the new purchase orders.

**ANSWER:**

Walgreens admits only that Brenda Cabalquinto responded to emails from Zeeshan Kaba

in or about September 2014, and refers AllergEase to the emails themselves for the actual

substance of the communications.  Walgreens denies any allegations of Paragraph 33 that are

inconsistent with those emails, and denies the remaining allegations of Paragraph 33.

34.     WALGREENS Category Manager Mike Parkis also responded to Zeeshan Kaba's emails requesting clarification on or about September 17 and 22, 2014, and also did not indicate that there were any technical glitches or other irregularities surrounding the new purchase orders.

**ANSWER:**

Walgreens is without knowledge or information sufficient to form a belief as to the truth

of the allegations in Paragraph 34, and therefore denies the same.  Walgreens' investigation

continues as to the allegations in Paragraph 34.

35.     ALLERGEASE sent invoices to WALGREENS on or about September 30, 2014, at which time ALLERGEASE shipped the product for the 11 purchase orders from September 2014. WALGREENS has not paid the invoices.

**ANSWER:**

Walgreens admits that AllergEase seeks payment for the product shipped on or about

September 30, 2014 to Walgreens.  Walgreens further admits that there is currently an

outstanding balance due to Walgreens from AllergEase.  Walgreens denies the remaining

allegations of Paragraph 35.

36.     Rather than pay its invoices to ALLERGEASE, WALGREENS has issued a number of invoices with improper charges to ALLERGEASE, some of which predate the September 2014 shipment and others of which postdate the shipment. They are detailed below:

**ANSWER:**

Walgreens admits only that it invoiced AllergEase and has not paid certain AllergEase invoices, but denies the remaining allegations of Paragraph 36.

37.     Invoice number 593931, dated June 4, 2013, concerns a setup fee for the April 2013 promotion detailed in paragraphs 10 through 15. The invoice is for an amount of $14,457.56.

**ANSWER:**

Walgreens admits that it sent invoices to AllergEase between 2013 and 2015, and refers AllergEase to the specific invoices themselves for their precise terms. Walgreens denies the allegations of Paragraph 37 to the extent they vary from the actual invoices at issue.

38.     WALGREENS issued the invoice for the setup fee to ALLERGEASE despite explicitly agreeing to waive the setup fee during negotiations for the April 2013 promotion.

**ANSWER:**

Walgreens denies the allegations of Paragraph 38.

39.     Invoice number 2004611, dated March 4, 2014, concerns a coupon promotion that ALLERGEASE agreed to enter into with WALGREENS. The invoice is for a total of $4,910.00, with $910.00 relating to coupon redemption and the remaining $4,000.00 being assessed by WALGREENS as a handling fee.

**ANSWER:**

Walgreens admits that it sent invoices to AllergEase between 2013 and 2015, and refers AllergEase to the specific invoices themselves for their precise terms. Walgreens denies the allegations of Paragraph 39 to the extent they vary from the actual invoices at issue.

40.     ALLERGEASE does not dispute the $910.00 for coupon redemption, but WALGREENS failed to inform ALLERGEASE of the $4,000.00 handling fee prior to the promotion and at no point did ALLERGEASE agree to this fee.

**ANSWER:**

Walgreens denies the allegations of Paragraph 40.

41.     Invoice number 2019735, dated July 8, 2014, concerns a markdown agreement between ALLERGEASE and WALGREENS. The invoice is for a total of $6,658.25, with $2,658.25 relating to ALLERGEASE's agreed-upon share of the cost of the markdown. As in the March 2014 promotion described in paragraph 39, the remaining $4,000.00 of the invoice was a handling fee that had not been disclosed to ALLERGEASE and to which ALLERGEASE did not agree.

**ANSWER:**

In response to the first and second sentences of Paragraph 41, Walgreens admits that it sent invoices to AllergEase between 2013 and 2015, and refers AllergEase to the specific invoices themselves for their precise terms.  Walgreens denies the allegations of the third sentence of Paragraph 41.  Walgreens denies the remaining allegations of Paragraph 41 to the extent they vary from the actual invoices at issue.

42.     Invoice number 2027919, dated September 4, 2014, concerns another markdown agreement between ALLERGEASE and WALGREENS. The invoice is for a total of $5,294.30, with $1,294.30 relating to ALLERGEASE's agreed-upon share of the cost of the markdown. As in the March 2014 promotion described in paragraph 39 and the July 2014 markdown described in paragraph 41, the remaining $4,000.00 of the invoice was a handling fee that had not been disclosed to ALLERGEASE and to which ALLERGEASE did not agree.

**ANSWER:**

In response to the first and second sentences of Paragraph 42, Walgreens admits that it sent invoices to AllergEase between 2013 and 2015, and refers AllergEase to the specific invoices themselves for their precise terms.  Walgreens denies the allegations of the third sentence of Paragraph 42.  Walgreens denies the remaining allegations of Paragraph 42 to the extent they vary from the actual invoices at issue.

43.     Between October 1, 2014, and May 1, 2015, WALGREENS issued 6 additional invoices to ALLERGEASE for defective product, totaling $46,553.11.

**ANSWER:**

Walgreens admits that it sent invoices to AllergEase between 2013 and 2015, and refers AllergEase to the specific invoices themselves for their precise terms. Walgreens denies the allegations of Paragraph 43 to the extent they vary from the actual invoices at issue.

44. The AllergEase lozenges that ALLERGEASE shipped to WALGREENS were not defective.

**ANSWER:**

Walgreens denies the allegations of Paragraph 44.

45. The invoices described in paragraphs 37 through 44 that WALGREENS assessed to ALLERGEASE total $77,873.22.

**ANSWER:**

Walgreens admits that it sent invoices to AllergEase between 2013 and 2015, and refers AllergEase to the specific invoices themselves for their precise terms. Walgreens denies the allegations of Paragraph 45 to the extent they vary from the actual invoices at issue.

46. Of the total invoice value of $77,873.22, ALLERGEASE admits that $4,862.55 constitutes proper charges. This value derives from the portions of invoices 2004611, 2019735, and 2027919 (described in paragraphs 39, 41, and 42) relating to the agreed-on expenses for promotions and markdowns.

**ANSWER:**

Paragraph 46 consists solely of admissions of AllergEase, to which no response is required from Walgreens. To the extent a response is required, Walgreens admits that AllergEase is responsible not only for the portion of the total invoice value it claims are proper, but AllergEase is also responsible for the full amount of any invoiced charges from Walgreens.

47. The remaining $73,010.67 consists of improper charges.

**ANSWER:**

Walgreens denies the allegations of Paragraph 47.

48. Zeeshan Kaba has attempted to contact WALGREENS by phone and email in order request payment of $35,011.68 for the AllergEase lozenges shipped in 2014 and to dispute WALGREENS' of improper invoices, but has not received a response.

**ANSWER:**

Walgreens admits only that Zeeshan Kaba contacted Walgreens regarding the AllergEase account, but denies that Zeeshan Kaba did not receive a response from Walgreens, and denies the remaining allegations of Paragraph 48.

## COUNT I: BREACH OF CONTRACT

49. Plaintiff ALLERGEASE adopts and realleges paragraphs 1-48 of the Allegations Common to All Counts, inclusive of this Count I against Defendant WALGREENS.

**ANSWER:**

Walgreens reasserts its responses to Paragraphs 1-48.

50. On May 1, 2013, WALGREENS placed twelve purchase orders with ALLERGEASE for allergy lozenges in the amount of $496,026.72. These twelve purchase orders represented a contractual agreement between the parties (hereinafter referred to as "the 2013 agreement").

**ANSWER:**

In response to the first sentence of Paragraph 50, Walgreens admits that it placed purchase orders with AllergEase in or around May 2013, and refers AllergEase to the specific purchase orders themselves for their precise terms. Walgreens denies the allegations of the first sentence of Paragraph 50 to the extent they vary from the actual purchase orders at issue. The second sentence of Paragraph 50 is a legal conclusion to which no response is required. To the extent a response is required, Walgreens denies the allegations of the second sentence of Paragraph 50.

51. ALLERGEASE and manufacturer Pharmaloz entered into a manufacturing agreement for the production of the allergy lozenges, to fulfill the 2013 agreement

**ANSWER:**

Walgreens is without knowledge or information sufficient to form a belief as to the truth

of the allegations in Paragraph 51, and therefore denies the same.

52.     ALLERGEASE performed its obligations pursuant to the 2013 agreement by
supplying all allergy lozenges ordered.

**ANSWER:**

Walgreens admits only that AllergEase supplied lozenges ordered by Walgreens.

Walgreens denies that AllergEase's obligations were limited to supplying the lozenges, and

denies the remaining allegations of Paragraph 52.

53.     Defendants WALGREENS breached the 2013 agreement in one or more of the
following ways:
   a.    Requested that the purchase order be dramatically reduced from $496,026.72, as
         agreed upon in the 2013 agreement, to $139,711.68, which is a reduction of
         $356,315.04;
   b.    Failed to make payment in full of $496,026.72, pursuant to the 2013 agreement;
   c.    Assessed ALLERGEASE with a wide variety of charges, reductions and fees in
         the amount of $73,010.67, which were never agreed to by the parties in the 2013
         agreement;
   d.    Failed to return unsold allergy lozenges back to ALLERGEASE at a market rate
         and allowed JD Closeouts to liquidate ALLERGEASE's product;
   e.    Failed to dishonor Register Rewards $4.00 off coupons even after their 2-week
         expiration date;
   f.    Otherwise failed to fulfill its obligations under the 2013 agreement.

**ANSWER:**

Walgreens denies the allegations of Paragraph 53.

54.     WALGREENS has made payments towards the $496,026.72 outlined in the 2013
agreement in the amount of $139,711.68.

**ANSWER:**

Walgreens admits only that it paid AllergEase the full amount of the adjusted purchase

orders, and denies the remaining allegations of Paragraph 54.

55.     On September 17, 2014, WALGREENS placed eleven purchase orders with
ALLERGEASE for allergy lozenges in the amount of $35,011.68. These eleven purchase orders

represented a contractual agreement between the parties (hereinafter referred to as "the 2014 agreement").

**ANSWER:**

In response to the first sentence of Paragraph 55, Walgreens admits that it placed purchase orders with AllergEase in or around September 2014, and refers AllergEase to the specific purchase orders themselves for their precise terms. Walgreens denies the remaining allegations of the first sentence of Paragraph 55 to the extent they vary from the actual purchase orders at issue. The second sentence of Paragraph 55 is a legal conclusion to which no response is required. To the extent a response is required, Walgreens denies the allegations of the second sentence of Paragraph 55.

56. ALLERGEASE performed its obligations pursuant to the 2014 agreement by supplying all allergy lozenges ordered.

**ANSWER:**

Walgreens admits only that AllergEase supplied lozenges ordered by Walgreens. Walgreens denies that AllergEase's obligations were limited to supplying the lozenges, and denies the remaining allegations of Paragraph 56.

57. Defendants WALGREENS breached the 2014 agreement in one or more of the following ways:
   a.   Failed to make payment in full of $35,011.68, pursuant to the 2014 agreement;
   b.   Otherwise failed to fulfill its obligations under the 2014 agreement.

**ANSWER:**

Walgreens denies the allegations of Paragraph 57.

## COUNT II: UNJUST ENRICHMENT

58. Plaintiff ALLERGEASE adopts and realleges paragraphs 1-48 of the Allegations Common to All Counts, inclusive of this Count II against Defendant WALGREENS.

**ANSWER:**

Walgreens reasserts its responses to Paragraphs 1-48.

59. Subsequent to both parties consenting to the 2014 agreement, Plaintiff ALLERGEASE fully and satisfactorily performed its duties and obligations under the terms of the 2014 agreement.

**ANSWER:**

Walgreens denies the allegations of Paragraph 59.

60. WALGREENS materially benefitted from receiving eleven purchase orders of the ALLERGEASE allergy lozenges valued at $35,011.68.

**ANSWER:**

Walgreens denies the allegations of Paragraph 60.

61. WALGREENS has sold, and continues to sell, ALLERGEASE allergy lozenges to customers, for profit, stemming from the 2014 agreement.

**ANSWER:**

Walgreens admits only that it has sold in the past and may currently sell AllergEase allergy lozenges. Walgreens denies the remaining allegations of Paragraph 61.

62. WALGREENS has failed to pay for the allergy lozenges shipped by ALLERGEASE pursuant to the 2014 agreement.

**ANSWER:**

Walgreens admits only that AllergEase's account has fallen into a debit balance and a full hold has been placed on AllergEase's account. Walgreens denies the remaining allegations of Paragraph 62.

## COUNT III: DETRIMENTAL RELIANCE

63. Plaintiff ALLERGEASE adopts and realleges paragraphs 1-48 of the Allegations Common to All Counts, inclusive of this Count III against Defendant WALGREENS.

**ANSWER:**

Walgreens reasserts its responses to Paragraphs 1-48.

64. In making representations set forth in the common allegations the Defendants, WALGREENS did intend that ALLERGEASE would rely on the representations and knowing and having a reasonable expectation that ALLERGEASE would in fact rely thereon.

**ANSWER:**

Walgreens denies the allegations of Paragraph 64.

65.    ALLERGEASE relied upon WALGREENS' representations that WALGREENS would pay $496,026.72 for the twelve purchase orders it placed on May 1, 2013.

**ANSWER:**

Walgreens is without knowledge or information sufficient to form a belief as to the truth

of the allegations in Paragraph 65, and therefore denies the same

66.    Upon confirmation of the quantities of product ordered by WALGREENS on May 1, 2013, ALLERGEASE entered into a manufacturing contract with Pharmaloz to produce the needed inventory of the allergy lozenges. The manufacturing cost ALLERGEASE $544,083.54.

**ANSWER:**

Walgreens is without knowledge or information sufficient to form a belief as to the truth

of the allegations in Paragraph 66, and therefore denies the same

67.    ALLERGEASE would not have entered into a manufacturing contract with Pharmaloz for the large quantity of allergy lozenges but for WALGREENS' twelve purchase orders on May 1, 2013 in the amount of $496,026.72.

**ANSWER:**

Walgreens is without knowledge or information sufficient to form a belief as to the truth

of the allegations in Paragraph 67, and therefore denies the same.

## COUNT IV: TORTIOUS INTERFERENCE WITH
## PROSPECTIVE ECONOMIC ADVANTAGE

68.    Plaintiff ALLERGEASE adopts and realleges paragraphs 1-48 of the Allegations Common to All Counts, inclusive of this Count IV against Defendant WALGREENS.

**ANSWER:**

Walgreens reasserts its responses to Paragraphs 1-48.

69.    At all times relevant, binding contracts existed between ALLERGEASE and Defendant WALGREENS.

**ANSWER:**

Walgreens admits only that there was a contract or contracts between AllergEase and Walgreens. Walgreens denies the remaining allegations of Paragraph 69.

70. In both the 2013 agreement and the 2014 agreement between ALLERGEASE and WALGREENS, the written agreements estopped WALGREENS specifically from reselling or liquefying any ALLERGEASE product, item, or inventory.

**ANSWER:**

Walgreens denies the allegations of Paragraph 70.

71. WALGREENS liquified all its remaining inventory of ALLERGEASE products by selling them to JD Closeouts, a third party, in violation of both the 2013 agreement and the 2014 agreement.

**ANSWER:**

Walgreens admits only that it liquidated AllergEase products. Walgreens denies that it breached any contract or agreement in doing so, and denies the remaining allegations of Paragraph 71.

72. JD Closeouts proceeded to sell the ALLERGEASE products at a liquidation price of $1.49 per pack. ALLERGEASE lozenges had until this point been available at $5.79 per pack at retail price, and $3.49 per pack at wholesale price.

**ANSWER:**

Walgreens is without knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 72, and therefore denies the same. In response to the second sentence of Paragraph 72, Walgreens admits only that, prior to a price markdown, 21-count packs of AllergEase lozenges retailed for approximately $4.99 to $5.99. Walgreens further admits that the vendor invoice price of a 21-count pack of AllergEase lozenges was $3.49. Walgreens denies the remaining allegations of Paragraph 72.

73. As a direct and proximate result of WALGREENS' decision to contract with JD Closeouts to liquify ALLERGEASE's allergy lozenge product, violating the both 2013 agreement and the 2014 agreement, ALLERGEASE lost the ability to sustain its pricing model,

ALLERGEASE's brand was negatively affected and ALLERGEASE suffered damages in amounts of $198,027.90 and additional amounts that will be established at trial.

**ANSWER:**

Walgreens denies the allegations of Paragraph 73.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

The Complaint fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE
### (Failure of Consideration)

AllergEase's claims should be denied in whole or in part based on failure of consideration. AllergEase admits that it has not performed fully under the parties' contractual obligations by failing to pay numerous invoices properly issued by Walgreens. *See* Compl. ¶¶ 31-48.

### THIRD AFFIRMATIVE DEFENSE
### (Failure to Mitigate)

AllergEase failed to mitigate its alleged damages. Upon information and belief, AllergEase should have mitigated any damages allegedly caused by its alleged detrimental reliance at least through sales of excess product to third parties.

### FOURTH AFFIRMATIVE DEFENSE
### (Economic Loss Rule)

AllergEase's tortious interference with prospective economic advantage claim is barred by the economic loss rule because AllergEase claims purely economic damages from an alleged breach of contract that cannot be recovered in tort.

### FIFTH AFFIRMATIVE DEFENSE
### (Estoppel)

AllergEase is estopped from pursuing the claims asserted in this action.

## SIXTH AFFIRMATIVE DEFENSE
### (Set-Off)

To the extent AllergEase has suffered any damages, such damages should be set-off for the reasons and by the amounts set forth in Walgreen's Counterclaim (set forth below).

## **PRAYER FOR RELIEF**

WHEREFORE, Walgreen Co. respectfully requests that the Court dismiss the case or enter judgment against Plaintiff as to all causes of action; deny every request for relief contained in Plaintiff's Complaint; and award Walgreens its reasonable costs and any other such relief as the Court deems just and proper.

## COUNTERCLAIM

Pursuant to Fed. R. Civ. P. 13, Defendant, Walgreen Co. ("Walgreens"), submits the following as its Counterclaim against Plaintiff, AllergEase, Inc. ("AllergEase").

## NATURE OF COUNTERCLAIM

1.      This is an action by Walgreens against AllergEase for breach of contract arising out of AllergEase's admitted failure to pay invoices issued by Walgreens pursuant to a valid contract.

## PARTIES

2.      AllergEase asserts that it is a Virginia corporation with a principal place of business in Danville, Virginia.

3.      Walgreens is an Illinois corporation with a principal place of business in Deerfield, Illinois.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Plaintiff is a citizen of Virginia and Defendant is a citizen of Illinois, and the amount in controversy exceeds $75,000, exclusive of interests and costs.

5.      In the alternative, this Court has supplemental jurisdiction over this counterclaim pursuant to 28 U.S.C. § 1367(a).

6.      This Court has personal jurisdiction over the Plaintiff because Plaintiff regularly transacts business in Illinois and because Plaintiff filed this lawsuit in the Northern District of Illinois.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the Northern District of Illinois is where a substantial part of the events or omissions giving rise to this counterclaim occurred.

## COUNT I: BREACH OF CONTRACT

8.     Walgreens repeats and realleges, and incorporates by reference as if set forth fully herein, Paragraphs 1–7.

9.     AllergEase agreed to pay Walgreens a setup fee for an April 2013 promotion of AllergEase lozenges. Under that agreement, AllergEase was responsible for paying $14,457.56 to Walgreens. AllergEase has not paid Walgreens for that setup fee.

10.    AllergEase agreed to pay Walgreens a $4,000 handling fee and $910 for coupon redemption related to a coupon promotion in or around March 2014. AllergEase has not paid Walgreens any of the $4,910 due pursuant to the parties' agreement.

11.    AllergEase agreed to pay Walgreens a $4,000 handling fee as part of a markdown agreement in or around July 2014. AllergEase further agreed to pay Walgreens $2,658.25 as its share of the cost of the markdown. AllergEase has not paid Walgreens any of the $6,658.25 due pursuant to the parties' agreement.

12.    AllergEase agreed to pay Walgreens a $4,000 handling fee as part of a markdown agreement in or around September 2014. AllergEase further agreed to pay Walgreens $1,294.30 as its share of the cost of the markdown. AllergEase has not paid Walgreens any of the $5,294.30 due pursuant to the parties' agreement.

13.    AllergEase agreed to pay Walgreens for any defective AllergEase product received by Walgreens. Between 2013 and 2015, AllergEase provided Walgreens with defective product in a total amount of $46,553.11. Despite receiving invoices requesting payment for the defective product, AllergEase has not paid Walgreens any amount for the defective product.

14.    Walgreens fully performed its contractual obligations to AllergEase.

15.     AllergEase breached its contractual obligations owed to Walgreens by failing to pay the amounts set forth in Paragraphs 9-13.

WHEREFORE, Walgreen Co. respectfully requests judgment against Defendant, AllergEase, Inc., in the amount of $77,873.22, plus interest, costs, and attorney's fees pursuant to the parties' agreement, and for such other and further relief as this Court deems necessary, just, and proper.

## JURY DEMAND

Walgreen Co. hereby demands a trial by jury, under Rule 38 of the Federal Rules of Civil Procedure, for all issues triable of right by a jury.

Dated:  August 31, 2015                    Respectfully submitted,

By: /s/  *Kenneth M. Kliebard*
       Kenneth M. Kliebard
       MORGAN, LEWIS & BOCKIUS LLP
       77 W. Wacker Drive, Suite 500
       Chicago, IL  60601
       Tel:  (312) 324-1000
       Fax:  (312) 324-1001
       E-mail:  kkliebard@morganlewis.com

       *Attorneys for Defendant, Walgreen Co.*

**CERTIFICATE OF SERVICE**

I, Kenneth M. Kliebard, an attorney, certify that I filed the foregoing **ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM** using the Court's ECF system, which will cause a true and correct copy of the same to be served electronically on all ECF-registered counsel of record on this 31st day of August, 2015.

/s/ *Kenneth M. Kliebard*
Kenneth M. Kliebard