UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALLERGEASE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 15 C 4873 |
| | ) | |
| WALGREEN CO., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Defendant Walgreen Co.'s ("Walgreens") motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 against Plaintiff AllergEase, Inc. ("AllergEase"), on all of AllergEase's claims and on Walgreens' counterclaim for breach of contract against AllergEase. For the following reasons, the motion is granted.

## BACKGROUND

Walgreens filed its motion for summary judgment on June 28, 2016. Then, AllergEase file its response brief on September 9, 2016. Finally, Walgreens filed its reply brief on September 30, 2016. Subsequently, the Court held oral argument on the instant motion on December 14, 2016.

The following facts taken from the record are undisputed, except where otherwise noted. "In early 2013, AllergEase and Walgreens entered into a contract for

the sale of allergy lozenges," ("the Product").  On May 1, 2013, Walgreens placed a series of purchase orders with AllergEase totaling $496,026.72.  The following day, AllergEase confirmed the order.  The parties dispute whether AllergEase communicated to Walgreens that it would need to "go into production" to fill the purchase order placed on May 1, 2013.  However, the parties agree that on June 28, 2013, four days before the product was set to be shipped, "Walgreens rescinded some of the purchase orders" that it placed on May 1, 2013.  At this point, the Product had not yet been delivered.  Thereafter, AllergEase delivered some of the Product to Walgreens.

Sales of the Product were weak.  Thus, according to Walgreens, in February 2014, it informed AllergEase that it was terminating their vendor relationship.  AllergEase disputes this, and instead asserts that Walgreens informed AllergEase of a "discontinuation."  Nevertheless, AllergEase does not dispute that subsequently "[a] Walgreens employee contacted" its CEO, Zeeshan Kaba ("Kaba"), "to arrange for the return of the excess inventory."  Moreover, AllergEase does dispute that Kaba "agreed to a 50% markdown of the store inventory," and that "he refused to accept the excess inventory" because he was unable to accept it in the middle or end of July.  Thereafter, AllergEase admits that in August 2014, Kaba again agreed to a 50% markdown.  AllergEase also admits that on several occasions through April and May 2014, a Walgreens employee tried to obtain Kaba's "approval to accept a return of the excess inventory."

It is undisputed that "[w]hen Walgreens discontinues a product, [it] typically takes one of three actions to dispose of the product: (1) destroy, (2) return, or (3) donate" it. "If a product is returned to the vendor, Walgreens asks the vendor for a return authorization ('RA'), and this communication typically occurs via email." However, "[i]n certain situations, such as when a vendor refuses to accept return of its discontinued product that is set to expire, Walgreens will look at alternative methods to dispose of the product, including third party-liquidation."

According to Walgreens, in August 2014, after AllergEase had repeatedly refused to approve the return of its excess Product, "Walgreens sought bids from third-party liquidators so as to recoup some money from the excess inventory that AllergEase refused to take back." Subsequently, a third-party "won the liquidation bid for the excess AllergEase product in the Walgreens distribution centers." Conversely, AllergEase asserts that "by June 10, 2014 . . . the process of discontinuation ceased," and therefore, the Product had not been discontinued in August 2014. In fact, according to AllergEase, the Product "was still being sold in 5500 stores and had been back in the planogram since June 10, 2014." Thus, according to AllergEase, when Walgreens liquidated the excess Product, it violated the parties' contractual agreement.

Walgreens does not dispute that the Product "was still being sold in 5500 stores and that it had been back in the planogram since June 10, 2015." Moreover, the parties agree that "[i]n September and October of 2014 Walgreens issued additional

purchase orders to AllergEase, which AllergEase shipped." These purchase orders amounted to $35,011.68. However, in November 2014, Walgreens informed Kaba that because the Product was not performing well, it "was looking for [an] exit strategy." Consequently, "[i]n March 2015, a Walgreens employee again notified [ ] Kaba that AllergEase was being discontinued." "AllergEase never provided a return authorization to Walgreens for the excess inventory following this final termination."

After these events, AllergEase filed a complaint alleging that Walgreens breached the 2013 contract when Walgreens: (i) reduced its purchase order from $496,026.72, as agreed upon, to $139,771.68; (ii) failed to pay $496,026.72, as stated in the contract; (iii) "assessed AllergEase with a wide variety of charges, reductions and fees" totaling $73,010.67, "which the parties did not agree to in the 2013 agreement;" (iv) failed to return the unsold Product to AllergEase and instead liquidated it; (v) "failed to dishonor" Register Rewards coupons, which AllergEase had previously agreed to fund, "even after their 2-week expiration date;" and (vi) "otherwise failed to fulfill its obligations under the 2013 agreement." AllergEase also alleges that Walgreens breached the 2014 contract by failing to pay $35,011.68 for the purchase orders placed in the fall 2014 and by otherwise failing to fulfill its obligations under the 2014 agreement.

The Complaint also states claims for unjust enrichment based on allegations that Walgreens benefitted from receiving the fall 2014 purchase orders and failing to pay (Count II); detrimental reliance on Walgreens' representations that it would pay

4

$496,026.72 for the May 1, 2013 purchase orders (Count III); and tortious interference with prospective economic advantage when Walgreens liquefied the excess Product (Count IV).

Walgreens moves for summary judgment on all four counts as well as on Count I of its counterclaim for breach of contract based on AllergEase's "failure to pay invoices submitted by Walgreens pursuant to a valid contract." Thus, Walgreens seeks judgment in the amount of $77,873.22, plus interest, costs, and attorneys' fees.

## LEGAL STANDARD

Summary judgment is appropriate when the movant establishes that "there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact arises where a reasonable jury could find, based on the evidence of record, in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A motion for summary judgment requires the Court to construe all facts and to draw all reasonable inferences in favor of the non-movant. *Id.* at 255.

Northern District of Illinois Local Rule 56.1 requires the "party moving for summary judgment to include with that motion 'a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgement as a matter of law.'" *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004) (quoting N.D. Ill. R. 56.1(a)). The movant bears the initial burden of establishing that no genuine issue of material fact exists. *Genova v.*

5

*Kellogg*, 12 C 3105, 2015 WL 3930351, at *3 (N.D. Ill. June 25, 2015). "The burden then shifts to the nonmoving party to show through specific evidence that a triable issue of fact remains on issues on which the movant bears the burden of proof at trial." *Id.* The non-moving party must respond to the movant's Local Rule 56.1(a)(3) statement and may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits. N.D. Ill. R. 56.1(b); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The non-movant must support his contentions with documentary evidence of specific facts that demonstrate that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.

## DISCUSSION

### I. Breach of Contract and Detrimental Reliance

Walgreens admits that it rescinded several purchase orders due to reductions in the forecasted demand for AllergEase's product, but it argues that AllergEase's breach of contract and detrimental reliance claims "fail as a matter of law because the parties' contract gives Walgreens the unrestricted right to rescind purchases after those orders have been placed." To support this argument, Walgreens relies on a provision in the General Trade Agreement (the "GTA") that states: "Walgreen shall have the unrestricted right to rescind its purchase of the merchandise from Vendor both before and after acceptance of such merchandise by Walgreen." Thus, Walgreens argues, the "rescinded purchase orders in June 2013" were "in accordance with, not in breach of, the terms of the" parties' contract.

According to Walgreens, the "contract consists of two documents"—the GTA and "a one-page term sheet," (the "one-pager"). AllergEase admits that the relationship was governed by two contracts, and that it negotiated the terms of the one-pager with Walgreens. However, according to AllergEase, the GTA "was not a negotiated contract, rather it was a document that was supposed to be electronically signed in order to gain access to Walgreens' electronic system, by which vendors could receive purchase orders and check sales." Walgreens denies this fact. According to AllergEase, during discovery, Walgreens produced "a signed copy of the GTA, which was [purportedly] executed by the parties on March 23, 2012." AllergEase, however, maintains that it would have been impossible for it to have signed a GTA, "electronically or otherwise" on March 23, 2012, since it had not entered into a relationship with Walgreens at that time. Thus, in response to Walgreens' motion for summary judgment, AllergEase argues that there is a genuine issue of material fact as to what "version" of the GTA, if any, governs the relationship between the parties.

AllergEase's argument is undermined by a number of its own admissions. To begin, the Complaint alleges that "[a]t all times relevant, binding contracts existed between" AllergEase and Walgreens. Such an allegation would be necessary considering the fact that AllergEase's Complaint states claims for breach of contract and detrimental reliance. Moreover, attached to the Complaint is an unsigned version of the GTA. Additionally, in responding to Walgreens's Local Rule 56.1 Statement of

7

Undisputed Material Facts, AllergEase admits that "[i]n early 2013, AllergEase and Walgreens entered into a contact for the sale of allergy lozenges." Thus, as the non-moving party, AllergEase has not presented documentary evidence of specific facts to demonstrate that there is a genuine issue for trial regarding whether a contract existed between these two parties.

While AllergEase also argues that there is a genuine issue of material fact as to which version of the GTA governs, we agree with Walgreens that "the key provisions concerning Walgreens' right to terminate purchase orders are substantively identical" in both the signed and unsigned GTA. The signed version of the GTA states: "Walgreen shall have the unrestricted right to rescind its purchase of the merchandise from Vendor both before and after acceptance of such merchandise by Walgreen." The unsigned version of the GTA, which is attached to AllergEase's Complaint, which alleges a breach of contract claim, states: "Walgreen shall have the unrestricted right to rescind its purchase of the merchandise from Vendor both before and after acceptance of such merchandise by Walgreen *and return any remaining merchandise to Vendor for full refund of any amounts paid for such merchandise.*" (emphasis added).

These provisions are substantially similar, and they provide Walgreens with the unrestricted right to rescind its purchase orders from AllergEase. *See Hill's Pet Nutrition, Inc. v. Fru-Con Const. Corp.*, 101 F.3d 63, 65 (7th Cir. 1996). Thus, because there is no triable issue of fact as to whether Walgreens breached its

contractual obligations when it rescinded some of its purchase orders in June 2013, summary judgment is entered in Walgreens favor on the breach of contract and detrimental reliance claims.

In an attempt to prevent the entry of summary judgment, AllergEase argues that the rescission provision in the GTA "purports to grant Walgreens a remarkable degree of one-sided contractual discretion" and "the covenant of good faith and fair dealing limits the exercise of discretion vested in one of the parties to a contract." This argument is unpersuasive because the implied covenant of good faith and fair dealing is applied to situations where "no express language addresses a given issue." *Cromeens, Hollomon, Sibert, Inc. v. AB Volvo*, No. 00 C 8143, 2001 WL 1164103, at *4 (N.D. Ill. Sept. 26, 2001) ("As the name states, the implied covenant of good faith and fair dealing is not a condition that appears on the face of a contractual agreement. Rather, an implied provision is one that is read in when no express language addresses a given issue."). The contract expressly provides Walgreens with the right to rescind purchase orders. Thus, despite AllergEase's request to apply the covenant of good faith and fair dealing, "[w]e will not extend our reach into the parties' contract in such an invasive matter." *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 395 (7th Cir. 2003). AllergEase has not, and does not argue that the rescission provision is unclear or ambiguous, which further precludes the application of the implied covenant of good faith and fair dealing. *See, e.g.*, *id.* (Illinois courts use implied covenant of good faith and fair dealing to determine the intent of the parties

when a contract is susceptible to two conflicting constructions); *F.D.I.C. v. Rayman*, 117 F.3d 994, 1000 (7th Cir. 1997) (quoting *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*, 908 F.2d 1315, 1357 (7th Cir. 1990)) ("When the contract is silent, principles of good faith . . . fill the gap. They do not block use of terms that actually appear in the contract."); *PNC Bank, N.A. v. Hoffman*, No. 2–14–0026, 2014 WL 4749173, at *8 (Ill. App. Ct. 2004) ("The implied obligation of good faith and fair dealing is essentially used as a construction aid in determining the parties' intent where a contract has language that may be interpreted in two conflicting ways."). Moreover, even if the implied covenant could be applied, AllergEase has not come forward with any evidence to raise a triable issue as to whether Walgreens acted in bad faith in rescinding the purchase orders, which is required by law before the implied covenant can support a breach of contract claim. Walgreens' rescission was based on poor sales of the product, a condition clearly within the concept of good faith by a purchaser for resale.

Finally, although the Complaint alleges a breach of contract claim based on Walgreens' purported failure to pay for the purchase orders that it placed on September 17, 2014, this particular contractual relationship is not addressed in the motion for summary judgment. Likewise, AllergEase does not further develop these allegations or its argument in support of these allegations in its response brief. Accordingly, the Court will not address AllergEase's breach of contract claim based on the alleged contractual agreement that the parties entered into in fall 2014. The

Court is "not going to do" either parties' "research and try to discover whether there might be something to say" in support of or against the breach of contract claim based on the alleged 2014 agreement. *See Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999).

## II. Unjust Enrichment

Walgreens asserts that the claim for unjust enrichment, based on Walgreens' purported failure to pay for purchase orders from September and October 2014, totaling $35,011.68, fails as matter of law because AllergEase "incorporated allegations of an express contract in" its unjust enrichment claim. Paragraph 59 of the Complaint states, "[s]ubsequent to both parties consenting to the 2014 agreement," AllergEase "performed its duties and obligations under the terms of the 2014 agreement." It also alleges that Walgreens received the Product and failed to pay pursuant to the 2014 agreement. AllergEase responds that it pled an unjust enrichment claim in the alternative, in the event that the Court determines that there is no evidence that AllergEase ever executed the GTA. Because the complaint contains allegations of an express contract—the 2014 agreement—this claim fails. *See Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013) (a plaintiff may plead breach of contract in one count and unjust enrichment in another, but "allegations of an express contract which governs" the parties relationship may not be included in the unjust enrichment count) (citations omitted); *Duffy v. Ticketreserve, Inc.*, 722 F. Supp. 2d 977, 993 (N.D. Ill. July 6, 2010) ("Unjust enrichment is a quasi-contractual theory

11

of recovery that ordinarily is not available where an express contract exists."); *Sharrow Grp. Zausa Dev. Corp.*, No. 04 C 6379, 2004 WL 2806193, at *3 (N.D. Ill. Dec. 6, 2004) (dismissal of unjust enrichment claim is "especially appropriate where the plaintiff has attached relevant contract to the complaint"); *Canadian Pac. Ry. Co. v. Williams-Hayward Protective Coatings, Inc.*, No. 02 C 880, 2003 WL 1907943, at *5 (N.D. Ill. Apr. 17, 2003) ("While Plaintiff is entitled under Federal Rule of Civil Procedure 8(e)(2) to plead the alternative claims of breach of contract and unjust enrichment despite the inconsistency between those claims, Plaintiff's unjust enrichment claim must not include allegations of a specific contract governing the parties relationship.").

### III. Liquidation Damages and Tortious Interference with Prospective Economic Advantage

Walgreens presents three arguments regarding why it is "entitled to summary judgment on AllergEase's claims that Walgreens improperly liquidated" excess inventory. First, Walgreens asserts that AllergEase "has not produced any evidence to show how it was harmed by the liquidation." Second, Walgreens contends that "AllergEase's theory of lost profits is improperly based on unadulterated speculation and is barred by the new business rule." Third, Walgreens argues "to the extent AllergEase bases its claim on the theory in Count IV of the Complaint—that Walgreens' liquidation tortuously interfered with AllergEase's prospective economic

advantage—that claim fails because AllergEase has not and cannot identify another business relationship that supposedly was interfered with by Walgreens."

The Court addresses Walgreens' third argument first. Count IV of the Complaint alleges that Walgreens' liquidation of the excess inventory amounted to tortious interference with AllergEase's prospective economic advantage. To state a claim for tortious interference with prospective economic advantage, AllergEase must allege that: (i) it had a reasonable expectation of entering into a valid business relationship; (ii) Walgreens knew of this expectation; (iii) Walgreens purposefully or intentionally interfered to prevent AllergEase's legitimate expectancy from ripening into a valid business relationship; and (iv) AllergEase experienced damages from such interference. *United Road Towing, Inc. v. IncidentClear, LLC*, 14 C 10191, 2014 WL 1598101, at *3 (N.D. Ill. Apr. 9, 2015). Walgreens asserts that, "to the extent that AllergeEase bases its claim on the theory . . . that Walgreens' liquidation tortiously interfered with AllergEase's prospective economic advantage," that claim fails because AllergEase "never identified the valid business relationship that Walgreens supposedly interfered with by liquidating the Product," "[n]or has AllergEase established that Walgreens knew of any such" relationship.

AllergEase did not address these arguments in its response brief, and the Court agrees with Walgreens. The Complaint lacks allegations that AllergEase had a reasonable expectation of entering into a valid business relationship and/or that Walgreens knew of such a relationship when it liquefied the Product. Instead, the

Complaint states, "[a]s a direct and proximate result of Walgreens' decision to" liquefy the Product, "AllergEase lost the ability to sustain its pricing model, [its] brand was negatively affected and [it] suffered damages" totaling $198,027.90 and "additional amounts that will be established at trial." These allegations speak to damages that AllergEase may have suffered, but they are insufficient to state a claim for tortious interference with prospective economic advantage. Thus, Count IV of the Complaint fails. Moreover, to the extent that AllergEase attempts to argue that it is entitled to liquidated damages because Walgreens tortuously interfered with AllergEase's prospective economic advantage by liquidating the excess Product, that claim similarly fails for the same reasons.

In response to Walgreens' first argument that AllergEase "has not produced any evidence to show how it was harmed by the liquidation," AllergEase contends that it can prove damages due to Walgreens' breach and tortious interference with prospective economic advantage "in any manner that is 'reasonable.'" AllergEase does not cite to any case law for this proposition. Instead, it explains that, in order to calculate its damages from the liquidation of its excess Product, AllergEase "used the difference between the retail cost of the product, and the cost at which it was being sold through the wholesalers." However, AllergEase admitted that "[i]n calculating [its] claimed damages from the liquidation [ ] Kaba did not take into account AllergEase's agreement to a 50% markdown on the retail price charged by Walgreens to its customers for the remaining AllergEase store inventory" and that Kaba "had no

14

documents or evidence to show that AllergEase could have sold the product that was ultimately liquidated at the full retail price of $5.79." Moreover, AllergEase admitted that Kaba "had not done any analysis to show that AllergEase's sales were affected by the liquidation." Despite admitting these facts, AllergEase attempts to argue that it has provided the trier of fact with "enough information as to determine the losses" that it sustained due to the liquidation of the excess Product. We disagree.

The Court agrees with Walgreens' second argument that "AllergEase's theory of lost profits is improperly based on unadulterated speculation and is barred by the new business rule." In response, AllergEase again relies on the same arguments discussed above. As the nonmovant, AllergEase was required to go beyond the pleadings and support its contentions with documentary evidence of specific facts that demonstrate that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. AllergEase merely relies on Kaba's testimony that its damages were lost profits, which were calculated by using "the difference between the retail cost of the product, and the cost at which it was being sold through the wholesalers." Yet, this calculation fails to account for a number of important factors, including the fact that the Product had already been marked-down by 50%, and that it was going to expire in a relatively short period of time. While "the amount of an award of lost profits need not be proven with absolute certainty, the plaintiff bears the burden of proving such damages with reasonable certainty." *SK Hand Tool Corp. v. Dresser Indus., Inc.*, 672 N.E. 2d 341, 348 (Ill. App. Ct. 1996); *see Transp. & Transit Assocs., Inc. v. Morrison*

*Knudsen Corp.*, No. 98 C 2827, 1999 WL 116229, at *4 (N.D. Ill. Feb. 26, 1999) ("Damages due to lost profits must be calculated with reasonable certainty."). AllergEase has failed to meet its burden.

Moreover, AllergEase ignores another one of Walgreens' arguments—its assertion that "under the 'new business rule' AllergEase is precluded from recovering the lost profits damages because AllergEase is a new business with no history of profits." *SK Hand Tool*, 672 N.E. 2d at 348 ("Illinois courts have long held . . . that while profits lost due to business interruption or tortious interference with a contract may be recovered, the business must have been established before the interruption so that the evidence of lost profits is not speculative."). In the instant matter, as the nonmovant, AllergEase has failed "to produce sufficient evidence of the damages element of its claim." *Dunkin' Donuts Inc. v. N.A.S.T., Inc.*, 428 F. Supp. 2d 761, 767 (N.D. Ill. Dec. 28, 2005). Thus, Walgreens' motion for summary judgment on AllergEase's claim that Walgreens improperly liquidated AllergEase's excess inventory is granted.

**IV. Counterclaim**

Walgreens filed a counterclaim alleging that AllergEase breached its contractual obligations to Walgreens when it "failed to pay Walgreens a variety of fees and costs related to set-up, handling, coupon redemption, markdown, and defective product." Walgreens asserts that it "is entitled to summary judgment on its counterclaim . . . in the amount of $77,873.22 because AllergEase has either

relinquished its corresponding related claims disputing those fees or agreed to the fees at issue." AllergEase agreed and admitted that it signed the one-pager, which states that as part of a guaranteed sale, "AllergEase will participate in an exit strategy, if the item is discontinued, for the 90 day markdown period and cover 50% of the markdown," and "[a]ccept a return of all residual inventory and associated fees and provide a RA number to Walgreens." According to Walgreens, the handling fees that AllergEase disputes fall into the category of "associated fees" referenced in the one-pager under guaranteed sale. Moreover, Walgreens argues that AllergEase agreed to pay the handling fees, and that AllergEase "has not produced any evidence to the contrary." In Response, AllergEase asserts that the record does not support Walgreens' contention that "AllergEase has relinquished or agreed to the fees at issue." We disagree.

AllergEase admits that it agreed to pay the $14,457.56 to Walgreens as a setup fee for an April 2013 promotion. In fact, Kaba admitted this at his deposition when he stated that AllergEase had agreed to pay the invoice referenced in paragraph 37 of the complaint for $14,457.56. Furthermore, pursuant to the Complaint and Kaba's deposition testimony, AllergEase does not dispute that it agreed to pay $910.00 for coupon redemption related to a coupon promotion around March 2014. However, AllergEase disputes that it owes $4,000.00 as a handling fee for the March 2014 coupon promotion, arguing that it never agreed to pay such a handling fee. The Complaint additionally alleges, and Kaba also admitted at his deposition, that

17

AllergEase agreed to pay $2,658.25 as its share of the cost of a markdown that occurred in July 2014, as well as $1,294.30 as its share of the cost of a markdown that occurred in September 2014. But, AllergEase disputes that it owes a $4,000.00 handling fee associated with each markdown. Finally, AllergEase disputes that it owes Walgreens $46,553.11. Yet in his deposition, when asked if he was disputing the invoice regarding the defective product, Kaba stated that it was "within Walgreens' legal rights" to submit such an invoice.

Kaba admitted that although the Compliant alleged that AllergEase was improperly charged $73,010.67, AllergEase actually agreed to several of those charges, and therefore, it is only disputing that it owes $12,000.00 related to handling fees that it allegedly did not agree to pay. Specially, Kaba agreed that instead of seeking $73,010.67, it was seeking $12,000.00. This assertion is further supported by the fact that AllergEase's response brief only contests the $12,000.00 in handling fees. AllergEase explicitly states, "[t]he record is clear that Plaintiff contests $12,000.00 in 'handling fees' that Walgreens charged, without authorization, in connection with Coupons AllergEase ran as a promotional tool." While AllergEase subsequently argues that there are "several genuine issues of material fact as to what fees were, or were not, known about, and/or accepted," AllergEase has conceded on multiple occasions that it is only disputing the $12,000.00 handling fees. Thus, there is no genuine issue of material fact that Walgreens is entitled to $65,873.22, which is the difference between the amount that Walgreens is seeking in its counterclaim for

breach of contract, $77,873.22, and the $12,000.00 for the handling fees that AllergEase argues it was improperly charged.  Summary judgment is entered in Walgreens' favor on its counterclaim, and judgment will be entered in the amount of $65,873.22.

## CONCLUSION

For the aforementioned reasons, the motion for summary judgment is granted. It is so ordered.

_____
Charles P. Kocoras
United States District Judge

Dated:  1/6/2017